### HILL v. SOUTHERN RY.

1. RAILROADS—UNION—RIGHT OF WAY.—The provision in the charter of the Spartanburg and Union Railroad in requiring the road to be located near the village of Union, is complied with by building it through the village, and thereunder the railroad had the right to acquire right of way through the lots in the village.

2. NONSUIT.—EXCEPTION raising error in granting nonsuit on ground not raised on Circuit, not considered.

3. RAILROADS—RIGHT OF WAY—ADVERSE USE—JURY—TITLE.—Where there is evidence of the adverse use and claim of part of the right of way of a railroad, inconsistent with its use for corporate purposes, for the period requisite to acquire title by prescription, the question of title should be submitted to the jury.

4. EXCEPTION too general.

Before BUCHANAN, J., Union, October term, 1902. Reversed.

Action by Ann E. Hill against Southern Railway. From judgment of nonsuit, plaintiff appeals.

*Mr. J. Clough Wallace,* for appellant, cites: *As to construction of charter:* 44 N. J. Ch., 398; 73 Miss., 330; 20 Or., 60; 22 S. C., 545; 23 Ency., 2 ed., 680b; 17 Ohio, 340; 8 Rich., 177. *As to the presumption:* 40 S. C., 182; 18 S. C., 141; 31 S. C., 1. *As to adverse use:* 22 S. C., 547; 31

S. C., 125. *As to ruling out conversation:* 18 S. C., 494; 1 Green. Ev., sec. 109; 46 S. C., 95.

*Mr. C. P. Sanders,* contra, cites: *As to interpretation of charter as to location:* 1 Lew. on Em. Dom., secs. 255, 257; Pierce on R. R., 258; 5 Allan, 221; 9 Vroom, 548; 4 Stuart, 475; 5 Id., 755; 64 Pa. St., 137; 20 Ohio St., 190; 94 Am. Dec., 84; 28 S. C., 388; 38 S. C., 37; 41 S. C., 406; Pierce on R. R., 261; 13 Barb., 646; 11 Stat., 484. *Question not raised below not considered:* 62 S. C., 293; 63 S. C., 153.

December 1, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from an order of nonsuit. The complaint alleges that the plaintiff is the owner and in the exclusive and peaceable possession of a certain lot of land in the town of Union, containing one and one-half acres, situate within a quarter of a mile of the court house and within the original limits of said town, as shown by the charter of 1837. That the defendant, on the 15th day of November, 1898, and on divers other days, wrongfully, unlawfully, wilfully and maliciously, and against the consent and written objection of the plaintiff, entered upon said lot, dug up her soil, trampled her grass, &c., to her damage $2,000.

The defendant, by its answer, denied the material allegations of the complaint and set up certain defenses, which are not material in considering the questions raised by the exceptions.

The assignment of error in the exceptions numbered 1, 2 and 3 will be considered together and are as follows:

"1. Because his Honor erred in holding that the presumption of right and title to the Spartanburg and Union Railroad Company, under sec. XI. of its charter, by grant from the owner of the land upon which the said railroad may be constructed, together with 100 feet from the center of the track on each side of the same for railroad purposes, where

there was no written agreement or contract between the owner and the company, unless suit was brought within the period limited, applied to lots and lands within the corporate limits of the town of Union at the date of said charter, and in granting the nonsuit on this ground, and in holding that the presumption of the statute did not so apply, and in not refusing on that ground the motion for nonsuit.

"2. Because his Honor erred in holding that under the act of 1855, renewing and amending the charter of the town of Union (12 St., p. 371), the stating (in sec. 2 thereof) 'the Spartanburg and Union Railroad depot now in course of erection in said town,' 'as a center' from which the corporate limits of said town should be measured one-half mile instead of from the court house, gave the railroad company the right to go through and exercise the right of eminent domain, and have all the benefits of the presumptions under sec. XI. of its charter in the town of Union, as incorporated at the date of the charter of the railroad company, as fully as if the said charter had specifically provided that the said company should have the right to build and construct its road through the village of Union, and in granting the nonsuit on this ground; and he further erred in not holding that the act in no way affected the rights and liabilities of the said railroad company, under its charter, and in not refusing the nonsuit for that reason.

"3. Because his Honor erred in holding that the making (in the amended town charter, 12th St.) the railroad depot the point from which to measure the corporate limits of the town, showed the intention of the legislature, in the charter of the railroad company (1845), to give the railroad company the right of eminent domain in and the right to construct its road through the town of Union, as then incorporated, and to give the railroad company everything it should need or want anywhere."

The act chartering the Spartanburg and Union Railroad Company authorized it to construct a railroad "on the most practical route from the town of Spartanburg passing near

the village of Union to connect with the Greenville and Columbia Railroad or the Charlotte and South Carolina Railroad," &c. It was not the intention of the legislature to prevent the railroad from passing through the village of Union, but to require that it should be built at such distance as to be convenient and useful to the inhabitants of the village. This purpose was subserved by building the railroad through the village. The railroad company under its charter had the same right to acquire a right of way through lots in the village as in other lands. These exceptions are, therefore, overruled.

The fourth exception is as follows: "4. Because so much of sec. XI. of the said railroad company charter as gives a grant from the owner by statutory presumption to the said railroad company to the land on which its road should be constructed, together with 100 feet from the center of the track on either side thereof, for railroad purposes, where there was no written contract, if suit not brought within the period limited, was and is unconstitutional and void, under the Constitution of this State and of the United States, in that it in effect took and takes private property without compensation; and the nonsuit should have been refused on this ground." This exception cannot be sustained for the reason that the question presented by it was not raised on Circuit, and his Honor, the presiding Judge, did not rule upon it.

The fifth exception is as follows: "5. Because, even if the presumption of the statute did apply to lots and land in the town of Union, there was evidence to show continuous adverse obstruction of the right for more than twenty years by plaintiff and those through whom she claimed, and the Judge should have sent the issue to the jury, and his not doing so and granting the nonsuit was error." The record contains the following statement: "J. Clough Wallace, Esq., being duly sworn, testifies as follows: Did you ever hear a conversation between your grand-father, Mr. Meng, and Mr. Jeator, who

was president of the Southern Road at that time? A. Yes, sir. Q. State what that conversation was? Mr. Sanders: We object. I don't think any conversation between these parties can effect this case at all. If we have got a right of way there, we had it under the charter, which says what our limit is. The Court: Suppose the charter does not give you that right? When did this conversation occur? A. In 1866 or '67, after the road was built. Mr. Sanders: We submit that is incompetent. Court: I think that is incompetent. Mr. Wallace: We claim, if the State gave them a presumptive right of way, we propose to show that the right of way has been obstructed for forty years. Court: In that view, I think it is admissible. A. In 1866, I was sitting on the western porch of the residence with my grand-father, and Mr. Jeator, who was then the president of the railroad, came down the railroad—it was in the morning, just after breakfast time—Mr. Jeator came down from his residence. On the triangle lot through which this side track is now put, there was a big red oak tree right edge of the cut. In years the weather had washed the dirt from under the root of this tree and the top, which I suppose was fifty feet, died, and Mr. Jeator came along and called grand-father to that tree and said, 'Mr. Meng, that tree is dangerous and I would like to have it cut down.' My grand-father said, 'No, sir, you have got no right to touch that tree.' Mr. Jeator said, 'Well, I know I didn't have a right to do it, but it is somewhat dangerous, and I thought you would be willing.' My grand-father said, 'No, let it stand like it is.' "

There was also testimony to show that in the lifetime of plaintiff's father, who died in 1869, the lots in question were fenced up to the edge of the railroad, and that he claimed the land exclusively as his own.

In *Railway Co.* v. *Beaudrot*, 63 S. C., 266, 41 S. E., 299, Mr. Justice Jones thus states the doctrine in such cases: "It appears in the 'Case' that the defendant had erected within the alleged right of way a substantial fence enclosing what defendant claimed exclusive of any right therein by plaintiff.

Such an assertion of right to exclusive occupancy of the land is not compatible with the right of easement belonging to the plaintiff. If such adverse holding should run for the statutory period, the easement would be defeated. We do not say that the mere use or occupation of land, within the right of way acquired by a railroad company, is such adverse use as would give currency to the statute of limitations, unless the use is inconsistent with the easement; but we do say that the enclosing of land within the right of way, under a claim of exclusive right to use and occupation, and a refusal to remove the enclosure after demand therefor, is some evidence of the assertion of a claim, incompatible with plaintiff's alleged easement, which, under the issues raised, ought to have been submitted to the jury." This principle is affirmed in the case of *Matthews* v. *Southern Ry. Co., ante,* 499. This exception is sustained.

The sixth exception is as follows: "6. Because his Honor erred in not allowing plaintiff to prove by her own testimony and other evidence to have followed, to rebut the presumption of the statute, what her father said about the right of the railroad company to go through the premises, and that there was never any deed or grant to the land or right of way through the premises in question." This exception is too general for consideration.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.