CASE No. 1137.

WARING v. CHERAW & DARLINGTON RAILROAD COMPANY.

1. The charter of a railroad company provided that, in the absence of contract, it should be presumed that the land on which the road was built had been granted to the company unless the owners of the land made application for an assessment of damages within ten years thereafter, saving the rights of *femes covert* and infants until two years after the removal of their disabilities. The company, in 1854, constructed its road on land which had been devised to a *feme covert* executrix and her heirs in trust for her married sister for life, and after her death "to the issue which she may leave living at the time of her death." The executrix and her husband qualified in 1850; the husband died in 1869, and the executrix still survives as his widow. The married sister died in 1880, and soon thereafter, her surviving issue brought action against the railroad company to recover compensation for the land so appropriated. *Held*, that the legal estate being in the executrix and her husband for more than two years after the road was built, and then in the executrix, as trustee, for more than two years after she became discovert, with contingent remainders to the children, the action was barred by the terms of the charter.

2. The word "hereinafter," in the seventeenth section of the charter of the Wilmington & Manchester Railroad Company (11 *Stat.* 408), was intended for *hereinbefore*, and must be so construed; the manifest intention of a statute will control the use of an inappropriate and senseless word.

3. A motion for new trial will not be granted on the ground of newly-discovered evidence, where such evidence could not avail the moving party.

4. Proceedings to obtain compensation for right of way, instituted in 1859, and then suspended, without assessment made, cannot operate to prevent the bar of the Statute of Limitations from running against such claim, or from defeating action brought eleven years afterwards for the same purpose, unless a continuance of the former action can be shown.

Before Pressley, J., Darlington, March, 1881.

In this case, the Honorable Joseph B. Kershaw, presiding judge of the Fifth Circuit, sat in the place of Associate Justice McIver, who had been of counsel in the cause.

This was an action instituted in February, 1880, by Paul H. Waring and others, surviving issue of Frances Irene Quirk, against the Cheraw & Darlington Railroad Company to recover compensation for the use by the defendant corporation of their road-bed through the lands of the plaintiffs, such compensation to be fixed by commissioners, and, if not paid, for the recovery of the land itself.

This land was devised by James Hunter, who died in 1850, to his daughter, Mary Ann McClenaghan, and her heirs forever, in trust, for the sole and separate use of his daughter, Frances Irene, for and during the period of her natural life, free and discharged from the control, &c., of her husband; and after the death of the said Frances Irene, the land was devised "to the issue which she may leave living at the time of her death." Frances Irene married Mr. Waring during her minority, by whom she had two children, and after his death, married Mr. Quirk, by whom she had two other children. She died in January, 1880, leaving these four children surviving her. She and her husband, Waring, took possession of this land in 1858, and she continued in possession until her death.

Mrs. McClenaghan and her husband qualified as executors in 1850. McClenaghan died in 1869, and Mrs. McClenaghan is still living, with one child. The road was built in 1854. No contract or agreement was made with the road when it was being

built or afterwards.   Mrs. McClenaghan and her husband made no demand upon the railroad company for compensation; it was not shown that Mrs. Waring ever did, until after the war, when some compromises were offered, but nothing was done.

The Circuit decree was as follows:

Plaintiffs are the children of Irene Hunter by her marriages with Paul H. Waring, and after his death with William Quirk. They apply for an assessment of damages arising from the use of right of way through their lands by the railroad of the defendant.   Their title is derived through the will of their grandfather, who devised the land to his executors and executrix in trust, for the sole and separate use of the said Irene, for life, and after her death, by a valid limitation over to the plaintiffs.   None of the executors qualified.   The executrix, Mary A. McClenaghan, in connection with her husband, George McClenaghan, only qualified in 1850.   The railroad of defendants passed through the land in 1854, without any assessment of damages or compensation to the owners.   George McClenaghan died in 1869; Irene Quirk (Hunter) died in January, 1880, and in February, 1880, this action was instituted.   Before that, in 1870 or 1871, Mr. Boyd was employed to press the claim, and there were negotiations between him and the president of the company in which defendant made offers of compromise, but did not at any time expressly admit the validity of plaintiffs' claim.   The bar of the statute provided in the charter of said company is now pleaded. The will devising said land confers upon the trustees no power to sell the said land, or to encumber it in any manner.   If this were a case of trespass to try title, in which defendant claimed the land by adverse possession, that claim would avail, because the legal estate was in a trustee, under no disability for more than ten years before commencement of this action; and adverse possession against the trustee will bar the life-tenant, though a married woman, and also the remaindermen, though minors. But it is not a case to try title unless it involved the doctrine of adverse possession.   It is a claim of easement by the defendant. That can be acquired only by grant or by such possession as creates the presumption of a grant.   By the charter of the

defendant that period is reduced to ten years, and the easement has been used for said road over twenty years. But that does not avail to bar the rights of the plaintiffs, because no presumption of grant can ever arise against *cestuis que trust* who are a married woman and minor children, where the trustee has no power to grant. If defendant, in this case, had an express grant from the trustees, it would be *ultra vires* and void, and no one would scarcely venture to claim that a grant, by presumption, could be any better than an express one.

*It is adjudged and decreed,* That plaintiffs are entitled to have five commissioners appointed for the assessment of damages done to the said land by the passage of said road through the same, and it is therefore ordered that five such persons as may be agreed on between plaintiffs and defendants, be and are hereby appointed for that purpose, they to proceed according to the manner provided in said charter. If the parties fail to agree in choosing said commissioners, then plaintiffs have leave to apply before me at chambers, or before Judge Hudson, for appointment of the same.

Defendant appealed on the following grounds:

1. Because his Honor erred in holding that the defendant sets up a claim of easement; whereas it is submitted that the right to an easement is not involved, but simply the right of the plaintiffs to compensation for land appropriated by the defendant under the authority conferred by their charter.

2. Because his Honor erred in holding that this is an action to determine a claim of easement; whereas it is submitted that it is an action simply to recover compensation, according to the provisions of the charter of the defendant, for land appropriated and now used by the defendant for railroad purposes, under the express authority conferred by the legislature in the charter.

3. Because his Honor erred in holding that no presumption of grant can ever arise against *cestuis que trust*, who are married women and minor children, when the trustee has no power to grant; whereas it is submitted that even between private individuals such presumptions will arise when the trustee can assert

the rights of the *cestuis que trust* and sequences in the enjoyment of the easement for the requisite period.

4. Because his Honor erred in holding that no presumption of grant can arise in this case from the possession of the defendant of the land appropriated for more than ten years, when the legislature, in the exercise of the right of eminent domain, has conferred in its charter the easement to the defendant, and only gave the right to the plaintiffs' mother, or her trustee, to have compensation therefor, to be obtained according to the provisions of the charter.

5. Because his Honor erred in holding that, in this case, the legislature had no power to grant the easement to the defendant, and as the legislature had no power, then the presumption of such grant can never arise against the plaintiffs.

6. Because his Honor erred in holding that the plaintiffs are entitled to the appointment of five commissioners to make an assessment of their damages against the defendant, for land appropriated for railroad purposes by authority of their charter, and used continuously for more than twenty years.

7. Because his Honor erred in holding that the plea set up by the defendant will not avail; when it is respectfully submitted that such a motion, in this case, practically denies to the legislature the exercise of the right of eminent domain.

The plaintiffs suggested the following grounds in support of the Circuit decree, in addition to that taken by the Circuit judge:

1. The limitation in their charter relied upon by the appellant is as essentially defective in its provisions as to render it inoperative and incapable of enforcement against the respondents.

2. That the life-estate in the premises in question, held in trust by Mary A. McClenaghan, was not affected by the limitation in the charter of the appellant, by reason of the coverture of the said Mary A. McClenaghan, and by reason of a contract in relation to said premises entered into with appellant before the period of limitation was complete as against the said Mary A. McClenaghan.

3. That even if the rights of the trustee and *cestui que trust* of the life-estate in the premises in question were barred in the

charter of the appellant, the rights of the respondents, who were remaindermen and minors, were not and could not be affected thereby.

Afterwards, plaintiffs gave notice of a motion to be made in this court for a new trial on the ground of after-discovered evidence. This evidence was the copy of an order signed by Judge Whitner, in 1859, appointing appraisers to assess the damages done to this land by the defendant corporation, and the affidavits of two of the commissioners that no action was taken. This order was entitled *Geo. McClenaghan and Mary Ann, his wife, trustees of F. A. Waring* v. *The Cheraw & Darlington Railroad Company.* The motion was supported by proper affidavits.

*Messrs. Townsend & Livingston,* for appellants.

*Messrs. Boyd & Nettles,* contra.

January 18th, 1882. The opinion of the court was delivered by

KERSHAW, A. A. J.   By their charter, the defendant company was vested with all the powers conferred by charter on the Wilmington and Manchester Railroad Company. By the sixteenth section of that charter, provision is made for compensation to the owners of land which should be required for a right of way, where, for the want of agreement as to value, or from any other cause, it could not be purchased from the owner. In such case the land could be "taken at a valuation to be made by five commissioners, or a majority of them, to be appointed by any court of record," &c. The fifteenth section of the act gave the company power to enter upon and lay out any lands required for the purposes of said road. The seventeenth section is in the following words: "In the absence of any contract or contracts with the said company, in relation to land through which the said railroad may pass, signed by the owner thereof, or by his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land upon which the road may be constructed, together with a

space of sixty-five feet on each side of the center of said road, has been granted to the company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold and enjoy the same as long as the same may be used only for the purposes of the said road, and no longer, unless the person or persons owning the said land at the time that the part of the said road which may be on the said land was finished, or those claiming under him, her or them, shall apply for an assessment of the value of the said lands, as hereinafter directed, within ten years next after the said part was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply for such assessment within ten years next after the said road is finished, he, she or they shall be forever barred from recovering the said land, or having any assessment or compensation therefor. Provided that nothing herein contained shall affect the rights of *femes covert* or infants until two years after the removal of their respective disabilities."

It was said by the learned judge who delivered the opinion of the Law Court of Appeals in *Lewis* v. *The Railroad Company*, 11 *Rich.* 93, construing this act, that "the general scheme adopted to secure to the company the right of way and compensation to the landholder is manifest. For the want of agreement as to the value of the land taken, or where it cannot be purchased, the sixteenth section directs a valuation by commissioners. But in the absence of any contract, or of any valuation by commissioners, within ten years from the completion of that part of the road, the seventeenth section authorizes the company to hold the land as long as it shall be used for the purposes of the road, and presumes a grant from the owner for that purpose; and should no application for an assessment be made within ten years, then the owner is forever barred from recovering the land or having any assessment or compensation."

Instruction may also be derived, as to the construction of this act, from the dissenting opinion of that eminent jurist, Judge Wardlaw, in the same case. Speaking of a vendee of the land which was taken for the purposes of the road, he said: "If he should permit the railroad company to hold, without complaint,

until the expiration of ten years from the time the road was there finished, the land would become subject to the company's right to enjoy the slip occupied by them so long as they continued to use it for their road, and no longer; but if compensation should be claimed and paid, the fee-simple absolute would thereby be vested in the company."

In the case under consideration, there was no contract in relation to the land. The company entered upon it and constructed their railway in 1854, and there was no assessment of value by commissioners within ten years next thereafter, nor any application for such assessment on the part of the owner within that period. The land, therefore, became "subject to the company's right to enjoy the slip occupied by them so long as they continued to use it for their road," unless there be something in the case to bring it under the operation of the proviso in favor of infants and *femes covert,* in which case two years after the removal of the disability would be required to perfect the rights of the company and conclude the owner. Upon that point we agree with the Circuit judge that "the legal estate was in a trustee, under no disability for more than ten years." We do not understand that either party denies that Mrs. Mary A. McClenaghan was trustee under the will, nor that the legal estate remained in her, either as sole trustee, or in conjunction with her husband, George McClenaghan, from 1850, when she qualified (with her husband) as executrix, until the death of Francis Irene Quirk (the *cestui que trust* for life), who died in January, 1880.

The legal estate was devised to Mary A. McClenaghan and her heirs, and she was seized of an estate in fee subject to the trusts declared in the will. This estate became vested in her husband, as would any such estate in relation to which there was no trust. The principle is thus conveniently stated by Mr. Hill in his treatise on trustees, page *304: "Upon the marriage of a female trustee, the legal interest in the trust property will become vested in the husband, either wholly or partially, according to the nature of the estate. If it consist of chattels personal in possession, they will devolve upon him absolutely by the fact of marriage, unless it be otherwise expressly provided; and if it

consist of chattels real, the husband's interest in them will be subject to the title to the wife by survivorship. Where the trust property is real estate, of inheritance, the husband will take either an estate by the curtesy if he have had heritable issue, or, otherwise, a bare estate during the life of his wife, jointly with her. * * * As the husband will be liable personally for any breach of trust committed by his wife, it must follow as a necessary consequence that she cannot act in the administration of the trust without his concurrence or consent."

The life-tenant of the use was a *feme covert,* and it was settled to her *sole and separate use,* and the remainders were contingent. *Faber* v. *Police,* 10 *S. C.* 385 ; *Ex parte Gadsden,* 3 *Rich.* 467 ; *Bacot* v. *Heyward,* 5 *S. C.* 445. Certainly, during the life-time of the tenant for life, the fee was in the trustee. No one else could have received the compensation required by the act to be paid to the owner of the land. McClenaghan and his wife could have made application for the compensation, and no one else could, and there was no disability except that of the coverture of Mrs. McClenaghan. It would have been necessary for her to join her husband in an application for the compensation, while he was yet alive, because, as has been shown, he was seized jointly with his wife of the legal estate; and as the fund to be received appertained to the inheritance, and the action would have survived to her, such joinder was necessary. She was, therefore, entitled to the benefit of the proviso which allowed her two years after the death of her husband within which to apply for compensation. These two years expired in 1871, and, though there was some negotiation in this interval in regard to the matter, it was suffered to drop. No such application was made as was required for the legal assertion of the right, and the bar of the statute was not affected thereby.

If the trustee was barred, the *cestuis que trust* are also barred, (*Long* v. *Cason,* 4 *Rich. Eq.* 69,) because the statute runs against the legal estate, which is vested in the trustee. Says Lord Chancellor Talbot : "Though the *cestui que trust* be an infant, yet he must be barred by the trustees not suing in time, for I cannot take away the benefit of the Statute of Limitations from the company, who are in default, and are entitled to take advan-

tage thereof as well as private persons, since their witnesses may die or their vouchers be lost. And as to the trust, that is only between the administrator and the infant, and does not affect the company. So, where there is an executor in trust for another, and the executor neglects to bring his action within the time prescribed by the statute, the *cestui que trust* or residuary legatee will be barred." *Wych* v. *East India Company*, 3 *P. Wms.* 310.

Regarding, as we do, this action as involving only the right of the plaintiffs to recover against the defendant company the compensation to which they suppose themselves entitled under the act, the judgment of this court is that the claim was barred before their interests in the land vested, and that they cannot, for that reason, maintain their action.

We have said nothing in regard to the point contended for by plaintiffs' counsel: that the limitation of the charter is so defective in its provisions as to render it inoperative. In this seventeenth section of the charter the owner is required to make application for an assessment of its value "as *hereinafter* directed," and no directions follow. It is said that the owner cannot comply with this impossible condition, and, hence, cannot be barred by the omission to do so. Ample directions are given in a previous section, and the meaning of the act is so plain that we feel it incumbent on us to disregard this manifest error. The whole scheme of the act cannot be permitted to be destroyed by a blunder so evidently unintentional. The very word which here is supposed to destroy the efficacy of the statute was disregarded in the construction of a deed in *Creighton* v. *Pringle*, 3 *S. C.* 94. For the reasons given there, we are constrained to arrive at a like conclusion in this case. The same principle applies to a statute under construction, in this respect, as to a deed or will. The evident intention will control the use of an inappropriate and senseless word. *Pott. Dwar. Stat.* 175, 207, *et seq.* Construed with reference to the other sections of the act, none can doubt that the word which was intended to be used by the legislature was "hereinbefore" instead of "hereinafter," and this construction is necessary to sustain the legislation.

One other point remains to be considered—the motion for a new trial. Upon this subject, without entering into the question

made as to the merits of the motion, or the power of this court to entertain the same, we think the newly-discovered evidence alleged is not such as could avail the plaintiffs. It tends to show that an application was made by Mr. and Mrs. McClenaghan, as trustees, for the appointment of commissioners to assess the damages, now claimed by the plaintiffs, in 1859. That commissioners were appointed by the court, but never met, and no further steps were taken in the matter. There has been no continuance of the proceedings, and the steps taken would not take the case out of the operation of the limitation as to time unless there had been a regular continuance of the proceeding. In order to avoid the operation of the Statute of Limitations by a plea that the action was commenced within the statutory period, the plaintiff must show a continuance of that action up to the time of trial. *McDowell* v. *Goodwyn,* 2 *Mill. Const. R.* 441; *Chapman* v. *Mayrant,* 2 *Spears* 484.

For some reason the parties did not see fit to proceed in their attempted assessment, and it is but reasonable to suppose that they supposed themselves to have had good reason for not doing so. As an account was required by the act to be taken of the benefit and advantage which had accrued to the owners of the land from the erection of the railroad, as well as the loss and damage resulting therefrom, and only the excess of loss over the benefits could be recovered, it is quite probable that the trustees considered that the pursuit of the matter would be fruitless. At all events they did not proceed, and the statutory period, to which they were limited, expired, and they lost the remedy.

The decree of the Circuit Court must be set aside and the complaint dismissed, and it is so adjudged.

SIMPSON, C. J., and McGOWAN, A. J., concurred.