10720

BONEY v. CORNWELL *ET AL*
(109 S. E. 271)

1. BOUNDARIES—DEED CALLING FOR LAND BOUNDED BY RAILROAD CONSTRUED AS TO BOUNDARY.—Deed conveying land described as bounded by railroad conveys merely to the edge of the right of way strip, if the railroad company has a fee-simple defeasible title thereto, but, if the railroad has merely an easement, it conveys to the center of the track, in absence of a showing that the parties intended that grantee should take only to the edge of the right of way strip.

2. EMINENT DOMAIN—RAILROAD'S CHARTER CONSTRUED TO GIVE RAIL-ROAD MERELY AN EASEMENT IN LAND USED FOR RIGHT OF WAY, WITHOUT PAYMENT OF COMPENSATION ON OWNER'S FAILURE TO SUE FOR COMPENSATION. WITHIN. TWO YEARS.—Under railroad's charter under Act Dec. 19, 1848 (11 St. at Large 533), providing that in absence of contract with owner land appropriated by the railroad for right of way purposes should be presumed to have been granted to the railroad on owner's failure to apply for assessment of value within two years after construction of the road, provided that on execution sale of the road or part thereof the right and title to the land shall immediately revert to the original owner, unless purchaser at sale shall keep up road for use of public, the railroad thereby acquired, not the fee in such land, but merely an easement of right of way.

3. TRIAL—HOLDING THAT RAILROAD OWNED LAND IN FEE, INSTEAD OF HAVING MERELY AN EASEMENT, HELD NOT CURED BY INSTRUCTION.—In suit involving issue of whether deed describing land as bounded by a railroad conveyed land merely to the edge of the right of way or conveyed to the center of the track, erroneous, holding that railroad had a fee-simple title to the strip of land used as right of way, instead of merely an easement therein, *held* not cured by instruction requiring jury to decide the boundaries called for by the deed.

4. ADVERSE POSSESSION—QUESTION FOR JURY.—In a law action to re cover real estate, the question of adverse possession is a jury question.

5. BOUNDARIES—WHETHER ADJOINING OWNERS AGREED AS TO LINE IS A JURY QUESTION.—In law action for recovery of real estate, whether adjoining owners agreed as to location of dividing line is a jury question.

6. EJECTMENT—WHETHER DEFENDANTS MADE PERMANENT IMPROVE-MENTS IS A JURY QUESTION.—In law action for recovery of real estate, question of whether defendants made permanent improvements on land is a jury question.

7. ESTOPPEL—QUESTION FOR JURY IN LAW ACTION.—In law action to recover land, the question of estoppel to claim the land is a jury question.

Before MAULDIN, J., Chester, Fall term, 1916.    Reversed and remanded.

Action by J. W. Boney against Mary Jane Cornwell et al. From judgment for plaintiff the defendants appeal.

The paragraph of the charter referred to in the opinion follows:

"XX.  Be it further enacted . that in the absence of any contract or contracts with the said company in relation to lands through which the said road or its branches may pass, signed by the owner thereof, or by his agent or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land upon which the said road or any of its branches may be constructed, together with a space of 65 feet on each side of the center of the said road, has been granted to the company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same, as long as the same be used, only for the purpose of said railroad, discharged from all persons' liens, and no longer, unless the person or persons owning the said land at the time that part of the said road which may be on the said land was finished, or those claiming under him, her, or them, shall apply for an assessment of the value of the said lands, as hereinbefore directed, within two years next after that part of said road was finished; and in case the said owner or owners, or those claiming under him, her, or them, shall not apply within two years next after the said part was finished, he, she, or they shall be forever barred from recovering said land, or having any assessment or compensation therefor; provided, nothing herein contained shall affect the rights of femes covert or infants, until two years after the removal of their respective disabilities; and provided also, that if the said road, or any part thereof, should be sold at execution sale for the debts of said company or otherwise, then, and in that case, all the right and title to the land which may have been condemned by virtue of this act shall immediately revert to the original owners, unless the purchaser or purchasers at such sale shall keep up the road

for the use of the public, in the same manner and under the same restrictions as by this act it is contemplated the Charlotte & South Carolina Railroad Company should do."

*Messrs. Gaston & Hamilton,* for appellants, cite: *Railroad being one of the boundaries in a deed, the grant is to the center of the right-of-way:* 81 S. E. 105 (Va.); 111 S. C. 87; 107 Va. 750, 60 S. E. 86; 106 Va. 407, 56 S. E. 135; 88 Va. 653, 14 S. E. 380; 121 Mass. 17. *Court should construe written instruments:* 111 S. C. 91, 96. *Natural object as boundary must be given preference over uncertain one:* 4 R. C. L. 78, 100, 191. *Easement created by charter of Railroad does not take away the right of reversion:* 111 S. C. 117. *Conveyance was of the right-of-way subject to easement of Railroad:* 99 S. C. 299; 100 S. C. 258. *No act of a life tenant, and no possession during his life time can be adverse to the remaindermen:* 82 S. C. 538; 59 S. C. 506; 64 S. C. 394; 60 S. C. 322; 66 S. C. 155.

*Messrs. Glenn & Glenn* and *S. E. McFadden,* for respondent, cite: *Judge properly called to the attention of the jury facts tending to show intention of grantor:* 1 Strob. 143, 3 Strob. 124. *Judge should instruct jury as to what boundaries are, and province of the jury to determine as a matter of fact where they are:* 2 Strob. 374. *Statute of Limitations will run against a trustee who holds the legal estate, and bar his right and that of the remaindermen as well:* 78 S. C. 334; 50 S. C. 120; 40 S. C. 168. *Third persons may hold trust estate adversely to both trustee and cestui que trust even though the latter be under disability at the commencement of such adverse possession:* 1 R. C. L. 754; Sec. 80; 12 A. L. R. 249; 4 L. R. A. (N. S.) 776; 44 Am Dec. 157; 14 Am. Dec. 157; 14 Am. Dec. 761; 2 A. L. R. 478; 78 S C. 143; 78 S. C. 334; 82 S. C. 534; 50 S. C. 120; 85 S. C. 373.

October 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for the recovery of certain real estate, described in the complaint, containing 13 acres, more or less, tried before Judge Mauldin and a jury, upon certain issues submitted involving title and right to possession. The verdict was in favor of the plaintiff, and the defendants have appealed.

While the complaint seeks the recovery of the entire tract of 13 acres, as a matter of fact the contest is limited to a narrow strip containing between 2 and 3 acres, upon which is located a storehouse, a dwelling house, and other buildings; the remainder of the tract being in the possession of the plaintiff, whose title thereto is not contested. We quote from the appellant's argument:

"The land in dispute is the small area of about two acres, on which are located the store building, dwelling, and barn."

A large body of land, of which the 13-acre tract was a part, belonged to Jane I. Cornwell, who was the widow of Elijah Cornwell and the stepmother of his two sons, Eli Cornwell and Dr. W. J. W. Cornwell. The plaintiff claims that on February 15, 1878, Jane I. Cornwell conveyed the 13-acre tract to her stepson, Dr. Cornwell; that Dr. Cornwell died in July, 1910, intestate, leaving as his sole heir at law his daughter, Mary C. Holler; that on January 7, 1916, Mary C. Holler conveyed to him 63 acres of land, consisting of 50 acres which Dr. Cornwell had previously owned and as to which there is no dispute and the 13-acre tract. The two tracts adjoin each other; the 50-acre tract lying south of the other.

The defendants claim under the will of Jane I. Cornwell, dated February 10, 1870, taking effect at her death in February, 1878, a few days after the execution of the deed

to Dr. Cornwell above referred to.   By the will she de-
vised her entire estate to her stepson, Eli Cornwell, in trust
for the use and benefit of himself and his wife, Mary C.
Cornwell, during their joint lives and to the survivor for
life, and after the death of both to be equally divided be-
tween the children of Mary C. Cornwell then living and the
children of such as may have predeceased her.   Eli Corn-
well is dead; Mary C. Cornwell, his widow, is living; she
is a defendant in this action, along with the other defend-
ants above named, her children.

The controversy over the disputed area will be better
understood by reference to the following rough draft of
the situation:

(1)   A  B  C  D — Disputed area.
(2)   A  E  H  D — Location of 13 acres as claimed by
                            plaintiff.
       B  E  F  G — Location of 13 acres as claimed by
                            defendants.
(3)                    — 50-acre tract owned by Dr. Corn-
                            well.
(4)                    — Barbara Corder land.

(5)                — Other lands of estate of Jane I.
                     Cornwell.
(6)                — Columbia Highway.
(7)                — C., C. & A. R. R.
(8)                — McLarnon line.
(9)                — Hardin line.
(10)               — Original dividing line between Dr.
                     Cornwell and Jane I. Cornwell.

There is no dispute as to the location of the southern line (10) between the 13-acre tract and the 50-acre tract (3) owned by Dr. Cornwell, nor as to the location of the western line between the 13-acre tract and the Barbara Corder land (4); the controversy is as to the location of the northern line between the 13-acre tract and the other land owned by Jane I. Cornwell(5), of which the 13-acre tract was a part; the plaintiff contends that the true line is that run by the surveyor McLarnon, indicated as (8) on the draft, which would give him the boundaries A E H D, inclosing the disputed area A B C D; the defendants contend that the true line is that run by the surveyor Hardin, indicated as (9) on the draft, which would give the plaintiff the boundaries B E F G, excluding the disputed area A B C D, and giving it to them under the will of Jane I. Cornwell.

The description of the 13-acre tract contained in the deed from Jane I. Cornwell to Dr. Cornwell, dated February 15, 1878, is the source of the uncertainty and the basis of the controversy. It is as follows:

"All that piece, parcel or tract of land on the west side of the C., C. & A. R. R.; containing 13-acres, bounded on the north by lands of Jane I. Cornwell, on the east by C., C. & A. R. R., on the south by Dr. W. J. W. Cornwell, on the west by Barbara Corder land."

The locus of irritation is the descriptive line "on the east by C., C. & A. R. R." Does that mean that the eastern

boundary line of the 13-acre tract is the center of the railroad tract, or the western line of the strip constituting the railroad right of way? The right of way of the railroad at this point is 65 feet on each side of the center of the track, which, on the western side, reaches to about the western edge of the Columbia highway.

It is apparent that, the southern line (10) of the 13-acre tract being fixed, the western line separating it from the Barbara Corder land (4) being also fixed, and the deed calling for 13-acres, the alternative correctness of the Mc-Larnon line or the Hardin line depends upon the proper location of the eastern line as being the edge of the right of way or the center of the railroad track. The survey of Hardin extended the disputed dividing line (9) across the Columbia Highway (6) to the center of the railroad track (7), inclosing an area of 13 acres; the survey of McLarnon extended the disputed dividing line (8) only to the Columbia Highway (6), also inclosing an area of 13 acres. The question, therefore, whether or not the disputed area is included within the description contained in the deed from Jane I. Cornwell, to Dr. Cornwell, depends upon the basis upon which the dividing line should have been run. Should it have had its terminus at the western edge of the right of way or at the center of the railroad track? It is apparent that the further east the dividing line should be extended the further south will be its location.

This question turns in a measure upon a proper construction of the charter rights of the railway company under Section 20, Act of 1848 11 Stat. 539), which will be reported. Did the railway company secure a fee-simple defeasible title to the strip of land or did it secure simply an easement? If the former, the terminus of the northern dividing line should be at the western edge of the right of way strip; if the latter, under the cases of *Wright v. Willoughby,* 79 S. C. 438, S. E. 971, and *Foster v.*

29—S. C. 117

*Foster,* 81 S. C. 307, 62 S. E. 320, the terminus should be at the center of the railroad track. In the first event the McLarnon line is the true dividing line; in the second the Hardin line, unless as declared in the case of *Wheeler v. Wheeler,* 111 S. C. 87, 94, 96 S. E. 714, it may be shown that the parties intended the edge of the right of way strip and not the center of the track.

The appellants contend that under the section of the railroad company's charter above referred to the company did not and could not acquire more than the easement of right of way, and that the Circuit Judge erred in holding that they acquired the fee to the strip of land. The respondent in his argument says:

"The presiding Judge charged, as requested by the defendant, that the grantor actually owned to the center of the railroad track, subject to the easement of the railroad and the highway, and he further instructed them that the title to this land passed under the deed. The Judge also specifically charged that the railroad could not acquire a fee in this land.

"The jury, after being so charged, found for the plaintiff, and the defendant cannot complain of the charge of the Judge, which was on this point exactly as he requested."

We do not so construe the charge. The charge contained a distinct and unequivocal declaration that the railroad company, in the absence of a contract with the owner, is presumed to have received a grant from the owner for the strip of land, and to have "good right and title thereto * * * as long as the same be used for the purposes of said railroad." He nowhere charged, as we can find, that the title to this strip passed under the deed, or that the railroad could not acquire the fee to the strip of land. His ruling that a grant was presumed, that the railroad company acquired good title thereto, defeasible upon abandonment, is entirely inconsistent with such a statement. The defend-

ants were entitled to have their first request charged, which was as follows: .

"Where a deed to land calls for a road as a boundary, such as a public highway or a railroad right of way, such conveyance of land includes the soil to the center of the way, provided the grantor owned to the center when the deed was excuted, and provided there are no words of specific description to show contrary intent."

The appellants in their requests to charge embodying their contention, which were not given, and in their exceptions, squarely raise the issue.

This Court, in construing a similar provision in 2, 3 the charter of another railroad company, has distinctly held that the company thereby acquired, not the fee, but an easement of right of way, of the stated dimensions. *Ragsdale v. Ry. Co.,* 60 S. C., 381, 389; 38 S. E. 609, which was reaffirmed in *Railway v. Beaudrot,* 63 S. C. 266, 268, 41 S. E. 299) ; and in the following cases the proposition seems to have been accepted without a suggestion of controversy; *Hill v. Ry. Co.,* 67 S. C. 548, 46 S. E. 486; *Harmon v. Railway Co.,* 72 S. C. 228, 51 S. E. 689; *So. Ry. Co. v. Howell,* 79 S. C. 281, 60 S. E. 677; So. Ry. *Co. v. Gossett,* 79 S. C. 372, 60 S. E. 956; *Lorick v. Ry. Co.,* 87 S. C. 71, 68 S. E. 931; *A. & C. Ry. Co. v. Electric Co.,* 99 S. C. 299, 83 S. E. 635.

The Circuit Judge was therefore in error in holding that the railroad company had the fee-simple title to the strip claimed by it as a right of way. While he did charge the jury:

"The jury must decide from the evidence what are the bounds to the land called for by the deed. All the circumstances and facts in evidence must be considered by the jury in deciding the boundaries called for by the deed of Mrs. Jane I. Cornwell put in evidence"

—a charge which, as we have seen, would have been entirely appropriate, under *Wheeler v. Wheeler,* 111 S. C. 87, 96 S. E. 714, to the theory of an easement and not a fee, it could not cure the error in holding that a fee had been acquired; for, if that be so, the dividing line would necessarily have its eastern terminus at the western line of the strip. The conclusion that the presumptive grant to the railroad company was of an easement and not of the fee raises a rebuttable presumption that the eastern line of the 13-acre tract was the center of the railroad track, but as the Court declares in *Wheeler v. Wheeler,* 111 S. C. 87, 96 S. E. 714:

"That 'construction is in conformity with the general rule that where a stream is given as a boundary the grant is presumed to extend to the middle of the stream. But, as clearly appears from the decision in that case, the rule is not invariable or inflexible. It may be shown that the parties intended the edge of the swamp rather than the stream as the boundary, and, of course, when that is made to appear by competent evidence, effect will be given to their intention. It may be conceded that parol testimony of a contrary intention is incompetent to vary or control the construction. But, as pointed out in *Felder v. Bonnett,* it may be done by other competent evidence appearing either upon the face of the deed itself, or of the plat made at the time, and proof of the actual location of a different boundary line on the ground, and possession taken and held to the boundary so located. Especially is this so where the boundary given in the deed is ambiguous or of doubtful meaning, as it clearly is in this case; for Pudding Swamp as a boundary may be either the edge of the swamp or the run of the stream."

This is a law case, and the questions of adverse possession by Dr. Cornwell, the location of the dividing line by co-operation with the trustees, per-

·manent improvements, estoppel, and perhaps others, are questions for the' jury and such as this Court is powerless to determine.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.