563 S.E.2d 644

**J. Larry FAULKENBERRY, Respondent,**

**v.**

**NORFOLK SOUTHERN RAILWAY COMPANY, Appellant.**

**No. 25454.**

Supreme Court of South Carolina.

Heard Dec. 12, 2001.

Decided April 29, 2002.

Rehearing Denied May 29, 2002.

Robert L. Widener, Robert W. Dibble, Jr., and Robert A. Muckenfuss, all of McNair Law Firm, P.A., of Columbia, for appellant.

Robert J. Sheheen, of Savage, Royall & Sheheen, of Camden, for respondent.

Elizabeth Van Doren Gray, of Sowell, Gray, Stepp & Laffitte, LLC, of Columbia, for amicus curiae Qwest Communications International, Inc.

WALLER, Justice:

This is a property dispute concerning ownership of a 200′ wide strip of land between Monticello Road and the Broad River in Columbia, upon which Appellant, Norfolk Southern Railway Co. (Railroad) operates its railroad. The circuit court ruled the property in question is owned by Respondent, J. Larry Faulkenberry. We affirm.

## FACTS

There is no dispute as to the underlying facts in this matter. Railroad's track bisects Faulkenberry's 200 acre piece of property, leaving approximately 97 acres on the western side of the tracks, which abut the Broad River. Railroad seeks to prevent Faulkenberry from using a crossing over the tracks.

Railroad claims title to the property pursuant to an 1845 Act which created its predecessor in interest, the Greenville and Columbia Railroad Company. Faulkenberry claims title under the last known recorded instrument of record in the chain of title for the property on both sides of the tracks. Title records prior to 1865 do not exist as they were burned by General Sherman in 1865 during the Civil War. Railroad does not dispute that Faulkenberry owns the property to the east and west of the railroad tracks in fee simple. The only issue

is what right or title each party has to the strip of land encompassed by the railroad tracks.

The Greenville and Columbia Railroad Company, was formed pursuant to 1845 Act No. 2953(Act).[1] Sections 9–12 of the 1845 Act set forth Railroad's powers with respect to acquisition of property upon which to operate. Those sections provide, in pertinent part:

9. That [Railroad] shall have power and capacity **to purchase, take and hold in fee simple** or for years, to them and their successors, any lands, tenements or hereditaments, . . . and in like manner to purchase all private rights of way or water courses that may lie on or across the route through which the said Railroad may pass . . .

10. That in any case where lands or private rights of way may be required . . . and the same **cannot be purchased** from the owner . . . for want of agreement as to price or from any other cause, the same **may be taken by the Company at a valuation** to be made by the Commissioners . . . appointed by the Court of Common Pleas. . . . and the lands **and right of way** so valued by the Commissioners . . . **shall vest in the said Company in fee simple,** so soon as the valuation thereof may be paid, or tendered and refused. . . .

11. That in the **absence of any written contract** between the said Company and the owner . . . of land, through which the said Railroad may be constructed . . . it **shall be presumed that the land** upon which the said Railroad may be constructed, together with one hundred feet on each side of the center of said road, **has been granted to the said Company** by the owner . . . and the said **Company shall have good right and title** to the same, (and shall have, hold and enjoy the same) unto them and their successors, **so long as the same may be used only for the purposes of the said road and no longer,** unless the person or persons to whom any right or title to such lands, tenements or hereditaments descend or come, shall prosecute the same within two years next after the construction of such part or portion of the said road as may be constructed upon the land of the said person or persons so having or acquiring

---

1. It is undisputed that construction of Railroad was completed by 1852.

such right to the title as aforesaid, and **if any person or persons to whom any right or title to such lands . . . belong . . . do not prosecute the same within two years** next after the construction of the part of the said road upon the lands of the person or persons so having or acquiring such right or title as aforesaid, then he or they, and all claiming under him or them **shall be forever barred to recover the same . . .**

12. That all lands not heretofore granted to any person nor appropriated by law to the use of the State, within one mile from the centre from the main track of the said road that may be constructed, be, and they are hereby vested in the said Company and their successors, so long as the same may be used for the purposes of the said road and no longer.

(Emphasis supplied). Railroad acquired the land used for its tracks pursuant to Section 11, above. The circuit court, pursuant to numerous cases of this Court, held Railroad acquired only an easement to use the tracks, rather than a fee simple determinable, and that, in any event, Faulkenberry was entitled to an easement by necessity.[2]

## ISSUE

Did Railroad acquire a fee simple determinable in the land occupied by the tracks by virtue of section 11 of 1845 Act No. 2593?

## DISCUSSION

■ As noted above, Railroad acquired its interest in the land at issue under section 11 of the 1845 Charter, which granted to it and its successors "good right and title . . . so long as the same may be used only for the purposes of the said road and no longer." The Act required the person having title to prosecute for compensation within two years or be forever barred to recover the same. At issue is whether this language granted a fee simple determinable estate in the property, or whether it merely created an easement.

---

**2.** The circuit court ruled that, in any event, Faulkenberry was entitled to an easement by necessity to cross the railroad tracks. In light of our holding, we need not address this alternate ruling.

Railroad correctly points out that "so long as" language in a deed is generally held to create a "fee simple determinable" estate. *See Purvis v. McElveen,* 234 S.C. 94, 98–99, 106 S.E.2d 913, 915 (1959) (fee simple determinable is an estate in fee with a qualification annexed to it). *See also* 28 Am.Jur.2d *Estates* § 28 (1966)(an estate in fee simple is created by any limitation which 1) creates an estate in fee simple and 2) provides the estate shall automatically expire upon the occurrence of the stated event).

■ Although use of a qualification ("so long as," "until," or "during") is generally used to indicate a determinable estate, it does not necessarily indicate a grant is in fee.[3] Notably, in 1868, the General Assembly enacted 1868 Act No. 43, § 7, providing that, upon payment of compensation, "the right of way over said lands ... shall **vest** in [Railroad] ... **so long as** the same shall be used for such highway, and no longer; but the fee in such lands ... shall remain in the owner thereof ..." (Emphasis supplied). Clearly, under 1868 Act No. 43, § 7, the interest created is an easement, rather than a fee simple determinable, notwithstanding use of the phrase "so long as."[4] Accordingly, we find use of the phrase "so long as"

---

3. Other courts have recognized the existence of a determinable easement, or an easement subject to a condition subsequent. *See Howell v. Clyde,* 127 N.C.App. 717, 493 S.E.2d 323 (1997); *Higdon v. Davis,* 315 N.C. 208, 337 S.E.2d 543 (1985); *Weir v. Consolidated Rail Corp.,* 12 Ohio App.3d 63, 465 N.E.2d 1341 (1983); *Gerhard v. Stephens,* 68 Cal.2d 864, 69 Cal.Rptr. 612, 442 P.2d 692 (1968); *Eggleston v. Fox,* 96 N.J.Super. 142, 232 A.2d 670 (1967). Although this Court has never recognized a defeasible easement, we have held an easement no longer used for its stated purposes has been abandoned and therefore extinguished. *See Immanuel Baptist Church v. Barnes,* 274 S.C. 125, 264 S.E.2d 142 (1980) (owner of easement may relinquish that easement by express or implied abandonment). *See also Saluda Motor Lines v. Crouch,* 300 S.C. 43, 386 S.E.2d 290 (Ct.App.1989)(where railroad ceased to use its right-of-way for railroad purposes, it abandons right-of-way).

4. The General Assembly simultaneously enacted the Constitution of 1868 providing that "[p]rivate property shall not be taken or applied for public use, or for the use of corporations ... without the consent of the owner or a just compensation being made therefor.... [L]aws may be made securing ... the right of way over the lands of either persons or corporations ... but a just compensation shall ... be first made." 1868 CONST., Art. 1 § 23, Art. 12 § 3.

does not necessitate a finding of a fee simple determinable estate.

Both this Court and the Court of Appeals have held the language of section 11 granted only an easement to Railroad. *Waring v. Cheraw and Darlington Ry.*, 16 S.C. 416 (1882); *Ragsdale v. Southern Ry. Co.*, 60 S.C. 381, 38 S.E. 609 (1901); *Southern Ry. v. Beaudrot*, 63 S.C. 266, 41 S.E. 299 (1902); *Hill v. Southern Ry.*, 67 S.C. 548, 46 S.E. 486 (1903)(recognizing Railroad acquired only a right of way under 1837 charter); *Harman v. Southern Ry.*, 72 S.C. 228, 51 S.E. 689(1905); *Southern Ry. v. Gossett*, 79 S.C. 372, 60 S.E. 956 (1908); *Boney v. Cornwell*, 117 S.C. 426, 109 S.E. 271 (1921); *Eldridge v. Greenwood*, 331 S.C. 398, 503 S.E.2d 191 (Ct.App.1998).

■ Railroad asserts all of these cases were wrongly decided based upon an erroneous reading of Justice Wardlaw's dissent in the "seminal" case of *Lewis v. Wilmington and Manchester R.R. Co.*, 45 S.C.L. (11 Rich.) 91 (1857), and upon an erroneous retroactive application of the 1868 Constitution and/or 1868 Act No. 43, § 7.[5] We disagree.

*Lewis* construed an 1846 Charter containing provisions virtually identical to those in the 1845 Charter in question. There, the plaintiff had purchased a tract of land from the prior owner after the railroad had already been constructed. The Court construed a portion of the Charter which barred recovery "unless the person ... owning the said land at the time that the part of the said road which may be on the said land was finished, or those claiming under him ... shall apply for an assessment of the value ... within ten years." A majority of the Court held Lewis could claim no right to an assessment, as that right was provided for "him who is the owner at the time the road is finished. It is not the land but the right to compensation that is involved in this controversy." The *Lewis* majority went on to state, however, that "[t]he **land or right of way is vested in the company in fee simple**

---

5. Railroad correctly points out that if the 1845 Charter operated to grant it a fee simple determinable estate in the property under the tracks, then the Legislature could not retroactively divest it of vested property rights. *See Robinson v. Askew*, 129 S.C. 188, 123 S.E. 822 (1924)(constitutional provision may be given retroactive effect so long as it does not divest vested rights); *Muldrow v. Caldwell*, 173 S.C. 243, 175 S.E. 501 (1934) (same with respect to statutory provisions).

**as soon as the valuation is paid** ... and if application for an assessment is not made within ten years after the completion of the road, the **owner is forever barred from recovering the land or having an assessment, which manifests the intention of the Legislature to divest the owner's title.**" 11 Rich at 94. (Emphasis mine). Justice Wardlaw dissented. Under his construction of the applicable sections of the 1846 charter, if the vendee (Lewis) permitted the railroad to utilize the land for ten years without complaint, then the land "would become subject to the Company's right to enjoy the slip occupied by them, so long as they continued to use it for their road, and no longer;—but if compensation should be claimed and paid, the fee simple absolute would thereby be vested in the company." *Id.* at 95.

Railroad contends the opinions of this Court and the Court of Appeals, subsequent to *Lewis,* have misconstrued Justice Wardlaw's dissent as indicating that only an easement was created, when in fact, Justice Wardlaw's dissent actually reflects a fee simple determinable. We disagree. Initially, we find Justice Wardlaw's dissent could be read as finding either an easement or a fee simple determinable. Moreover, we do not read subsequent case law as relying solely upon Justice Wardlaw's dissent.

In *Ragsdale v. Southern Ry. Co.,* 60 S.C. 381, 38 S.E. 609 (1901), the Court construed a Charter to the Spartanburg and Union Railroad which had provisions identical to those of sections 9, 10 and 11 above. The Court noted that, under sections 9 and 10, the Legislature had specifically provided that land taken by and paid for by the railroad would vest in fee simple. However, the Court noted that no such words were used in section 11, which provided only that the company shall have "good right and title ... so long as the same may be used only for the purpose of said road." The *Ragsdale* Court, after citing Justice Wardlaw's dissent in *Lewis,* concluded "[t]he legislature wisely made a distinction in the tenure by which the railroad company held the land when it was under one or the other of said sections. Having reached the conclusion that the rights of the parties are different under the foregoing sections, ... [o]ur interpretation of the foregoing sections is that the railroad company acquired only a right of way over the land described in the complaint." 60

S.C. at ——, 38 S.E. at 612. Although *Ragsdale* cited Justice Wardlaw's dissent in *Lewis,* it is patent that the primary rationale for the holding in *Ragsdale* is the discrepancy between the legislature's specific grant of a fee simple in sections 9 and 10 of the 1845 Charter, and the lack of such a specific grant in section 11. Moreover, several subsequent cases relied upon *Ragsdale* to find an easement. *See Southern Ry. v. Beaudrot,* 63 S.C. 266, 41 S.E. 299 (1902)(citing *Ragsdale,* court concluded it may be conceded railroad obtained only a right of way); *Southern Ry. v. Gossett,* 79 S.C. 372, 60 S.E. 956 (1908)(citing *Beaudrot* for proposition that railroad only obtained easement under 1845 charter); *Boney v. Cornwell,* 117 S.C. 426, 109 S.E. 271 (1921)(under 1848 charter, railroad acquired only an easement, and not a fee simple defeasible title; court cited *Ragsdale* for proposition that easement right of way rather than fee was created). *See also Hill v. Southern Ry.,* 67 S.C. 548, 46 S.E. 486 (1903)(recognizing railroad acquired only a right of way under 1837 charter); *Harman v. Southern Ry.,* 72 S.C. 228, 51 S.E. 689(1905)(court construed deed from grantor as granting an easement, noting the right of way obtained was same as that it would have acquired had it been obtained pursuant to the statutory grant under section 11 of the 1845 charter).

Most recently, in *Eldridge v. Greenwood,* 331 S.C. 398, 503 S.E.2d 191 (Ct.App.1998), the Court of Appeals addressed the interest acquired by railroad where it obtained property in three different manners: 1) by statutory grant under section 11 of its 1845 Charter, 2) through condemnation, and 3) by deed. As to the statutory grant under section 11, the Court of Appeals cited the prior authority of *Ragsdale, Beaudrot,* and *Boney* for the proposition that railroad's interest was an easement only.

■ We adhere to the wealth of authority in this state and hold the 1845 Charter created only an easement in Railroad, such that Faulkenberry is entitled to use the disputed crossing. We note, however, that although Faulkenberry may cross the railroad tracks, he may not do anything which would unreasonably interfere with Railroad's use of its easement. *Marion County Lumber Co. v. Tilghman Lumber Co.,* 75 S.C. 220, 55 S.E. 337 (1906) (owner of the dominant estate cannot materially interfere with use and enjoyment of servient es-

tate's easement; owners must be held during continuance of easement to have abandoned every use of the land except such as might be made consistent with the reasonable enjoyment of the easement). *See also Brown v. Gaskins,* 284 S.C. 30, 33, 324 S.E.2d 639, 640 (Ct.App.1984).[6]

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

**6.** We note that Faulkenberry is also prohibited from utilizing Railroad's easement in any manner inconsistent with the right of utilities, telephone and telegraph companies, etc. to construct, maintain, and operate lines upon the rights of way of railroad companies. *See* S.C.Code Ann. § 58–9–2020, 58–27–130 (Supp.2001).