632 S.E.2d 850

David W. GOLDMAN and Emilie E. Goldman, Respondents,

v.

RBC, INC., Petitioner.

No. 26178.

Supreme Court of South Carolina.

Heard June 6, 2006.
Decided July 3, 2006.

J. Edward Bell, III, of Sumter, for Petitioner.

Kristi F. Curtis, of Sumter, for Respondents.

Justice BURNETT:

RBC, Inc. (Petitioner) challenges the Court of Appeals' decision affirming the circuit court judge's ruling quieting title to a strip of land containing an abandoned railway in David W. Goldman and Emilie E. Goldman (the Goldmans). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1846, the General Assembly, anxious to encourage the building of railroads, granted a liberal charter by statute to the Wilmington & Manchester Railroad Company. In provisions typically seen in railroad charters of that era, the railroad was empowered to obtain land on which to lay track by buying it and receiving a deed; condemning it through the formal process of eminent domain; or through a statutory presumption of grant by which the railroad would simply lay track where it wished and then, if the owner asserted his rights within ten years after completion, pay the owner a fair market price for the land. Act No. 2986, 1846 S.C. Acts 402, §§ XVI and XVII. It is the third method which is at issue in

464

the present case, and it is undisputed the owner of the land at the time of construction never sought compensation from the railroad by 1863, ten years after this section of track was completed.[1]

CSX Transportation (CSX), the successor in interest to the Wilmington & Manchester and several other railroad companies which have used this particular track since 1863, in 1994 abandoned a 16.1–mile stretch of track between Lynchburg and Sumter through a process overseen by the former Interstate Commerce Commission. In 1995, Petitioner paid $104,000 to obtain a quitclaim deed from CSX for a 1.19–mile portion of the abandoned track, which it intended to use to bring railroad tankers to its location. Petitioner manufactures and installs non-sparking agitation equipment used in railroad tankers.

The Goldmans own a 190–acre farm through which a portion of the 1.19–mile track passes. The track is located across a pond about 100 yards from their home, which they built in

---

1. Section XVII of the railroad's charter prescribed the method by which the railroad acquired land by statutory presumption of grant:

In the absence of any contract or contracts with the said company, in relation to land through which the said road may pass, signed by the owner thereof, or by his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land upon which the road may be constructed, together with a space of sixty-five feet on each side of the center of the said road, has been granted to the company by the owner or owners thereof, *and the said company shall have good right and title thereto, and shall have, hold and enjoy the same, as long as the same may be used only for the purposes of the said road, and no longer,* unless the person or persons owning the said land, at the time that the part of the said road which may be on the said land, was finished, or those claiming under him, her or them, shall apply for an assessment of the value of the said lands, as hereinafter directed, within ten years next after the said part was finished; and *in the case the said owner or owners, or those claiming under him, her or them, shall not apply for such assessment within ten years next after the said road is finished, he, she, or they shall be forever barred from recovering the said land, or having any assessment or compensation therefore;* provided, Nothing herein contained shall effect the rights of feme coverts or infants, until two years after the removal of their respective disabilities.

Act No. 2986, 1846 S.C. Acts 402, § XVII. The emphasized portions of the charter highlight the language which has given rise to issues presented in this railway abandonment case and earlier, similar cases.

1992. Before the unanticipated sale to Petitioner, the Goldmans planned to buy the strip of land from CSX after abandonment in order to avoid litigation over its ownership and they contacted CSX to discuss a sale.

After CSX sold the land to Petitioner, the Goldmans sued Petitioner in 1998 to quiet title in themselves as adjoining landowners in the strip of land, totaling about four acres, which passes through their farm. The circuit court, on cross-motions for summary judgment ruled in favor of the Goldmans and ordered that fee simple title is held by the Goldmans.

The Court of Appeals affirmed. *Goldman v. RBC, Inc.*, Op. No.2004–UP–362 (S.C. Ct.App. filed June 4, 2004) (unpublished opinion). We granted the petition for a writ of certiorari to consider the following issue:

> Did the Court of Appeals err in rejecting Petitioner's argument that a ruling which quieted title in the Goldmans conflicts with *Lewis v. Wilmington & Manchester Railroad Company*, 45 S.C.L. (11 Rich.) 91 (1857)?

## STANDARD OF REVIEW

An action to remove a cloud on and to quiet title to land is one in equity. *Johnson v. Arbabi*, 355 S.C. 64, 68, 584 S.E.2d 113, 115 (2003). In an action in equity tried by a judge alone, the appellate court may find facts in accordance with its view of the preponderance of the evidence. *Doe v. Clark*, 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995); *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). However, this broad scope of review does not require the appellate court to disregard the findings made below. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981).

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The evidence must be viewed in the light most favorable to the non-moving party. *George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868 (2001). In reviewing a summary judgment motion, the appellate courts apply the same standards as the trial court under Rule 56(c), SCRCP. *Baughman v. Am. Tel. and Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991).

466

## LAW AND ANALYSIS

██ Petitioner argues the Court of Appeals erred in declining to follow the view Petitioner believes was expressed in *Lewis v. Wilmington & Manchester Railroad Company*, 45 S.C.L. (11 Rich.) 91 (1857). Petitioner contends the Goldmans are forever barred by statute from recovering the disputed land because their predecessors in interest failed to file for an assessment by 1863, ten years after completion of the railroad. CSX's predecessor obtained fee simple title to the property at that time, which was confirmed by this Court in *Lewis* and consequently became a property right which could not be divested by later developments in the law. Specifically, Petitioner relies on the statement in *Lewis* that "if application for an assessment is not made within ten years after the completion of the road, the owner is forever barred from recovering the land or having an assessment, which manifests the intention of the legislature to divest the owner's title. . . ." Id. at 94. Therefore, the Wilmington & Manchester Railroad obtained a fee simple title, meaning CSX, as successor in interest, was able to transfer a fee simple title in the land to Petitioner in 1995. We disagree.

In several cases, we have considered the following issue: When a previous landowner did not assert his ownership rights and force the railroad to buy the land within a specified period after completion of the tracks pursuant to a statutory presumption of a land grant contained in a railroad charter, did the railroad (A) obtain an easement across the land as long as it was used as a railroad, with the property reverting to present adjoining landowners when no longer used as a railroad or (B) obtain title to the land in fee simple absolute, giving the railroad's successor in interest the ability to transfer a fee simple title to the land? We repeatedly have held that the answer to this question is (A).[2]

---

2. When the railroad paid for the land, whether by deed transfer, condemnation, or after an owner asserted his right to payment, the railroad obtained a fee simple title. *Waring v. Cheraw & Darlington R.R. Co.*, 16 S.C. 416, 423 (1882) (citing *Lewis* dissent for proposition that "if compensation should be claimed and paid [by the railroad], the fee-simple absolute would thereby be vested in the [railroad] company"); *Ragsdale v. Southern Ry. Co.*, 60 S.C. 381, 389, 38 S.E. 609, 612 (1901) (same).

Most recently, in *Faulkenberry v. Norfolk Southern Ry. Co.*, 349 S.C. 318, 563 S.E.2d 644 (2002), the railroad argued it held a fee simple determinable estate in a 200–foot wide strip of land underlying the tracks, which its predecessor had obtained by a statutory presumption of grant provision in an 1845 railroad charter very similar to the one in the present case. We rejected the railroad's arguments in *Faulkenberry*, several of which are echoed by Petitioner in the present case. Citing several cases dating back to 1882, we held the railroad had only an easement as long as the land was used as a railroad, not a fee simple determinable estate. *Id.* at 325, 563 S.E.2d at 645; *accord Boney v. Cornwell*, 117 S.C. 426, 435, 109 S.E. 271, 274 (1921) (in deciding boundary dispute implicating charter by which railroad obtained land by statutory presumption of grant, Court cited several cases in which it "has distinctly held that the [railroad] company thereby acquired, not the fee, but an easement of right of way"); *Hill v. Southern Ry.*, 67 S.C. 548, 552–53, 46 S.E. 486, 487 (1903) (railroad holds an easement of right of way across land obtained by statutory presumption of grant); *Southern Ry. v. Beaudrot*, 63 S.C. 266, 41 S.E. 299 (1902) (railroad, which obtained easement of right of way by statutory presumption of grant, may bring action to force adjoining landowner to remove fence from area encompassed by easement); *Ragsdale v. Southern Ry. Co.*, 60 S.C. 381, 389, 38 S.E. 609, 612 (1901) (in dispute over use of buildings located next to railroad, Court held that railroad, when it obtains easement of right of way by statutory presumption of grant, obtains only an easement so long as it is used for railroad purposes, not title in fee simple absolute); *Waring v. Cheraw & Darlington R.R. Co.*, 16 S.C. 416, 423 (1882) (interpreting the Wilmington & Manchester charter and finding that when railroad obtains easement of right of way by statutory presumption of grant due to owner's failure to move for assessment during specified period, railroad then has "right to enjoy the slip occupied by [it] so long as [railroad] continued to use it for [its] road"); *Eldridge v. City of Greenwood*, 331 S.C. 398, 417–18, 503 S.E.2d 191, 201 (Ct.App.1998) (interpreting statutory presumption of grant language in railroad charter and explaining that "ample South Carolina Supreme Court precedent has defined the Railroad's interest in [such cases] as an easement only").

We reaffirm the position we took in *Faulkenberry* and the earlier cases. This result reconciles the seemingly conflicting provisions of Section XVII of the statutory charter.[3] Furthermore, this position represents the wiser choice on public policy grounds because it avoids unnecessary disputes between numerous past landholders and their heirs over ownership of small strips of land.

We take this opportunity to clarify *Lewis,* the case on which Petitioner primarily relies. The Lewis Court did not directly address the issue at hand and that opinion is neither controlling nor dispositive. The issue presented in *Lewis* was whether a grantee of the person who held the land when the railroad originally was built could seek compensation from the railroad before expiration of the ten-year period.

The *Lewis* Court held the later grantee could not seek compensation, and in doing so indicated in passing that "if application for an assessment is not made within ten years after the completion of the road, the owner is forever barred from recovering the land or having an assessment, *which manifests the intention of the legislature to divest the owner's title,* reserving to him the right to claim the purchase money or compensation alone...." *Id.* at 94 (emphasis added). We view the emphasized language, relied upon by Petitioner, as dicta or an inapt remark which does not support Petitioner's argument. It plainly was not the owner's title which was divested after ten years under these circumstances, but his right to seek compensation from the railroad. As the Lewis Court observed, "[i]t is not the land, but the right to compensation that is involved in this controversy...." *Lewis,* 45 S.C.L. at 94. In short, the Lewis Court did not decide whether the railroad, after obtaining land by statutory presumption of grant, held only an easement or title in fee simple because the Court was not faced with that issue. The ease-

---

3. Compare "the said company shall have good right and title thereto, and shall have, hold and enjoy the same, *as long as the same may be used only for the purposes of the said road, and no longer,*" indicating the railroad held an easement; with "[if] the said owner or owners, or those claiming under him, her or them, shall not apply for such assessment within ten years next after the said road is finished, he, she, or they *shall be forever barred from recovering the said land,* or having any assessment or compensation therefore;" indicating the railroad held a fee simple title.

ment-versus-fee-simple issue arose later and was resolved as explained in *Faulkenberry* and the cited cases.

## CONCLUSION

We reaffirm our previous holdings and conclude that when a previous landowner did not assert his ownership rights and force the railroad to buy the land within a specified period after completion of the tracks pursuant to a statutory presumption of a land grant contained in a railroad charter, the railroad obtained an easement across the land as long as it was used as a railroad, with the property reverting to present adjoining landowners when no longer used as a railroad. We reject an interpretation of *Lewis*, 45 S.C.L. 91, which conflicts with this established proposition. Accordingly, the Court of Appeals properly affirmed the circuit court's grant of summary judgment to the Goldmans.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER, JJ., and Acting Justice D. GARRISON HILL, concur.