19761

The TRUSTEES OF the COLUMBIA ACADEMY et al., Plaintiffs-Appellants-Respondents, v. The BOARD OF TRUSTEES OF RICHLAND COUNTY SCHOOL DISTRICT NO. 1 and Daniel R. McLeod, Attorney General of South Carolina, Defendants-Respondents-Appellants.

(202 S. E. (2d) 860)

118

*Messrs. Herbert, Dial & Windham* and *Robinson, Mc-Fadden, Moore & Pope,* of Columbia, *for Plaintiffs-Appellants,*

120

*Messrs. Boyd, Knowlton, Tate & Finlay,* and *Daniel R. McLeod, Atty. Gen.,* of Columbia, *for Defendants-Respondents-Appellants,*

*Messrs. Herbert, Dial & Windham* and *Robinson, Mc-Fadden, Moore & Pope,* of Columbia, *for Plaintiffs-Respondents,*

January 28, 1974.

BRAILSFORD, Justice:

In this action by the Trustees of the Academy of Columbia against the School Board of Richland County School

District No. 1 for judgment declaring Act No. 585 of the Acts of 1971 to be unconstitutional, the relief sought was granted in part and denied in part. Both parties have appealed.

We begin our, hopefully, brief recitation of the facts with the year 1795, when a corporate charter was granted by the General Assembly to five citizens of the recently established Town of Columbia as "The Trustees of the Academy of Columbia," for the "purpose of encouraging and promoting the education of youths," especially by "erecting and endowing an Academy in the said town of Columbia." The statutory charter vested full control of the corporation in the trustees, with the right of perpetual succession of officers and members. It granted to the corporation the square of land, containing four acres, on which the trustees had already constructed a building for the use of the Academy and two other squares of land, authorized it to raise the sum of $9,000.00 by lottery and to acquire money or property from other sources, etc., all in furtherance of its corporate purpose. The individual plaintiffs are successors to the original trustees of the Academy.

For some eighty years from its incorporation, the Academy owned and operated two schools in Columbia, one for males and one for females. Tuition fees were charged, and the Academy was assisted in establishing and operating its schools by public and private funds and property.

Free schools were first established in Richland County under the "Free School Act" of 1811. The Constitution of 1868, Article X, established for the first time the offices of State Superintendent of Education and County Commissioners of Schools. A school district with boundaries coterminous to those of the City of Columbia was established by an act of the General Assembly in 1880, 17 Stat. 404.

On March 18, 1883, the Academy leased both of its schools to the Board of School Commissioners of the City of Columbia for a term of three years and has never since

that time operated a school. This lease was renewed in 1887 and, perhaps, from time to time before the indenture of November 2, 1904, hereafter referred to, was executed. In December, 1883, the legislature amended the Act of 1880 creating the Columbia School District by providing for two additional school commissioners to be appointed by the Governor on recommendation of the Academy.

On November 2, 1904, "The Trustees of the Academy of Columbia" and "The Board of School Commissioners for the City of Columbia," entered into an indenture whereby the former leased unto the latter in perpetuity its two school properties, which had been operated by the Board as public schools since 1883 under the preceding lease or leases. The indenture was upon five so-called "conditions and covenants" with right of reentry upon failure to comply. Of these, all have been satisfied or waived, unless it be No. 4, which alone is in controversy. We quote:

"4. That the Board of School Commissioners for the City of Columbia shall include two members who shall have been nominated by the party of the first part and commissioned by the Governor of the State."

When the Columbia School District became a part of Richland County School District No. 1 in 1930, the provision for two Academy recommended school commissioners was made applicable to the new district. 36 Stat. 2015 (1930).

So far as the record reveals, the sole functions performed by the Trustees of the Academy of Columbia from 1904 until the passage of the controverted act were filling trustee vacancies as they occurred from time to time, recommending, from time to time, two persons for appointment as school commissioners for Columbia School District, later for Richland County School District No. 1, and, in 1963, consenting to the erection by Richland County School District No. 1 of school administrative facilities on the Academy's Taylor School tract. Well-known Columbia High

School has occupied the Academy's other tract since its erection by the School District in 1915.

The Act in controversy, approved by the Governor in July, 1971, purported (1) to eliminate the provision for the appointment by the Governor of two Academy recommended school commissioners, who should, instead, be chosen by popular election, (2) to repeal the 1795 statutory charter of the Academy, and (3) to transfer to the School District all real property, including improvements thereon, to which the Academy held title.

The complaint of the Academy assailed the statute as unconstitutional in all three of its aspects, and the answer of the school board defended it. The issues raised by the pleadings relate solely to the constitutionality of the 1971 Act and are agreed upon in the statement of the case, from which we quote.

"The issues made by the pleadings are:

"(1) Is the 1795 Act of the South Carolina Legislature incorporating the academy a contract between the State and the Academy protected from impairment by Article 1, Sec. 8 of the Constitution of South Carolina and Article 1, Sec. 10 of the Constitution of the United States or was the July 7, 1971 Act of the General Assembly cancelling the charter valid legislation?

"(2) Is the lease contract between the Academy and the Board a contract protected from impairment by Article 1, Sec. 8 of the Constitution of South Carolina and Article 1, Sec. 10 of the Constitution of the United States or was the 1971 Act of the General Assembly changing the terms of the lease a valid exercise of legislative power?

"(3) Is the 1971 Act of the General Assembly taking the property of the Academy and vesting title in the Board without a hearing and without compensation the confiscation of the Academy's property in violation of Article 1, Sec. 5 and Sec. 17 of the Constitution of South Carolina and the Fourteenth Amendment to the Constitution of the United States?

"(4) Is the 1971 Act of the General Assembly purporting to cancel the 1795 charter of the Academy unconstitutional as an effort by the legislative branch of the government to exercise judicial power?

"(5) Is the 1971 statute a special law when a general law could be made applicable, enacted in violation of Article 3, Sec. 34 of the Constitution of South Carolina?"

It is apparent that the second issue, as stated by the parties, relates to the first aspect of the statute, which abolishes the provision of the 1930 act extending the 1883 provision for Academy nominated members of the school board; the first, fourth and fifth issues so stated relate to the repeal of the Academy's statutory charter, and the third agreed issue is keyed to the third aspect of the statute transferring the Academy's property to the School District. We proceed to consider these issues in the order just stated.

So far as the record discloses, the provision for Academy nominated members of the School Board of the School District of Columbia originated with an act of the General Assembly, approved December 22, 1883, which simply amended the 1880 Act establishing the District by so providing. The Act made no reference to the indenture which had been entered into by the Academy and the School District on the preceding March 24 and which contained no appointment provision. As already indicated, the indenture of 1904 did contain such a provision, quoted *supra,* and this is the contract to which this aspect of the Academy's impairment claim relates.

The privilege of nominating members of the Board of School Commissioners for the City of Columbia, later Richland County School District No. 1, exercised by the Academy over the years, rested in the statutes of 1883 and 1930, not in contract. The Board was wholly without authority to contract with respect to the means of selecting its members. These public offices could be filled only as provided by law. The circuit court, while recogniz-

ing that the School District had been ably served over the years by distinguished and dedicated citizens nominated as school commissioners by the Academy, held that the General Assembly had plenary power, except as limited by the Constitution, to provide by law for the governance of the School District, and that the termination of the provision for the appointment of nominees of the Academy, not being constitutionally proscribed, is lawful. We agree. For the reasons hereafter stated, we also agree with the court's conclusion that the other challenged provisions of the statute, both incorporated in Section 3 thereof, are unconstitutional.

It is conceded, and properly so, that the charter of a private corporation is a contract protected by the Constitution of South Carolina and that of the United States from impairment by an act of the General Assembly. *Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629 (1819); *State v. Heyward,* 3 Rich. (37 S. C. L.) 389 (1832).[1] It is urged, however, that the Academy should be regarded as a public corporation because it was endowed in substantial part by public funds. We need not analyze the funds and property which appear from rather scant existing records to have been received by the Academy from both public and private sources. This is immaterial because mere receipt of some public funding does not make a corporation public. 18 Am. Jur. (2d), Corporations, Sec. 8, p. 555 (1965). Public corporations, within the meaning of this rule, are mere instrumentalities of the state and subject to its control. 18 C. J. S. Corporations § 18 (1939); 1 Fletcher, Cyclopedia of Corporations, Sec. 58 (1963). The test is whether " 'the government (has) the sole right . . . to regulate, control and direct the corporation, and its funds and its franchises, at its own will and pleasure.' " *Strauss v. Marlboro County General Hospital,*

---

[1] This rule was changed in South Carolina with respect to corporations organized after an act adopted in 1841, 11 Stat. 177, Sec. 12-401, Code of 1962, reserving to the General Assembly the authority to amend, alter or repeal such charters.

185 S. C. 425, 426, 194 S. E. 65 (1937), quoting from the *Dartmouth College* case, *supra.*

The Academy's 1795 statutory charter vested full ██ control of the corporation in the trustees and gave them the right to choose their successors. It unmistakably bespeaks the private character of the corporation and is a contract protected against impairment by both the state and federal constitutions.[2] So much of the 1971 statute as undertakes to rescind this charter is clearly unconstitutional on this ground. This conclusion makes it unnecessary for us to consider the other grounds on which the constitutionality of this provision of the statute is assailed. See issues four and five quoted *supra.*

The final question as framed in the agreed statement, ██ third issue, *supra,* assumes that the challenged provision of the statute took "the property of the Academy and (vested) title in the Board without a hearing and without compensation. . . ." Such a confiscation could be justified only if the Academy were a public corporation, a mere agency of the state. Our contrary conclusion leaves no doubt that this provision of the statute is in violation of Article I, Sec. 5 and Sec. 17 of the Constitution of South Carolina and of the Fourteenth Amendment to the Constitution of the United States. This statement of the issue leaves no room for the claim now made by the School District that the 1904 indenture transferred to it fee simple title to the property described therein. This claim is also opposed by the admissions of the School District's answer and the stipulations of the parties as to the nature of the instrument and of the District's possession thereunder. The claim was not presented to or passed upon by the circuit court; hence, it is not properly before us.

---

[2] We find no merit in the alternative position that the Academy became a public corporation when it ceased operating schools and leased its properties to the School District. The pleadings in this action for declaratory judgment raise no issue that the 1795 charter has been forfeited or abandoned, nor is this claim included in the agreed statement of issues.

This leaves for consideration the Academy's claim that the circuit court erred in holding that the constitutional and unconstitutional provisions of the statute are severable without having first found that the General Assembly would have passed the act sans inclusion of Section 3 if it had known that the provisions of that Section would be stricken as unconstitutional.

The 1971 Act consists of six sections. Section 6 is formal. Section 3 contains the provisions undertaking to repeal the Academy's 1795 charter and to confiscate its property, which have been held to be unconstitutional. The remaining sections all relate to the selection and composition of the Board of School Commissioners for Richland County District No. 1. When Section 3 is stricken the remaining sections are complete in themselves, fully capable of being executed in accordance with their terms, independent of that which has been stricken. Then, these sections are severable, and should be sustained as the effective expression of the legislative will, if it may fairly be presumed that the General Assembly would have enacted them independently of those provisions of the Act which are in conflict with the Constitution. 17 West's South Carolina Digest, Statutes, Key No. 64 (1952). The relevant exception is that the court made no finding that this was the case. It is safe to assume that the learned judge who decided this case on circuit was familiar with the legal tests to be applied in determining whether the provisions of this statute are severable. His conclusion that they are necessarily implies his determination that such tests had been fairly met. We find no error as assigned.

Our affirmance of the judgment appealed from leaves Richland County School District No. 1 in possession of the property described in the complaint under the lease of 1904. We do not read the complaint as challenging the District's right to such possession. This question was ex-

pressly reserved in the circuit court. It is not involved on this appeal, and we express no opinion thereabout.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.

