0337

Kenneth D. BROWN, Respondent, v. Russell GASKINS, Appellant.

(324 S. E. (2d) 639)

Court of Appeals

*J. Wesley Crum* of *Crum, Crum & Crum,* Denmark, *for appellant.*

*W. D. Rhoad,* Bamberg, *for respondent.*

Heard Oct. 23, 1984.

Decided Dec. 13, 1984.

CURETON, Judge:

In this action for an injunction against and damages for trespass, the issue raised is whether respondent Kenneth Brown, owner of a servient estate, may place a gate across an easement and require appellant Russell Gaskins, owner of the dominant estate, to open and close the gate as a condition of passage. The master in equity to whom the case was referred with finality held that the servient estate could burden the dominant estate with the gate. We agree and affirm.

Russell Gaskins owns property adjacent to the Edisto River to which he gains access by way of a road which runs from a highway across Kenneth Brown's property to the Gaskins property. Gaskins was granted an easement of ingress, egress and regress over the road by Brown's predecessor in title. Brown and his father have vacation houses on the back of their property and a stand of Christmas pines on the front of the tract.

When the Browns began to experience problems with trespassers who vandalized and littered their property and broke into and stole from their homes, they erected a gate across the entrance of the roadway leading to both Gaskins's and their own houses. Gaskins did not object to the erection of the gate and was given a key to the gate which was kept locked. The littering and vandalism stopped.

About a year later, Gaskins decided the gate was an inconvenience and began leaving it wide open. He testified that his friends had difficulty visiting him when the gate was locked

and that his parents had been inadvertently locked in when he left them at his house. Brown asked Gaskins to keep the gate locked but Gaskins refused. Lockouts by both parties occurred as hostilities grew.

Brown initiated this action against Gaskins in November, 1981, for damages caused by Gaskins's trespass and for an injunction prohibiting Gaskins from leaving the gate unsecured, locking Brown out and trespassing on Brown's land. Gaskins counterclaimed for damages for Brown's obstruction of Gaskins's use of his easement over Brown's property.

The master held first that Brown's erection of the gate across the easement was proper and did not unreasonably interfere with Gaskins's use of the easement. The master then found that he was unable to determine on the evidence presented whether a locked gate as opposed to a closed gate was necessary for the protection of Brown's property. He therefore ordered Gaskins to close the gate after entering onto or leaving the road. Brown was ordered to refrain from locking the gate until he established that a locked gate was necessary to protect his property. Gaskins appealed.

Gaskins concedes the general rule is that the owner of the servient estate may erect gates across an easement if they (1) are so located, constructed and maintained as not to unreasonably interfere with the right of passage of the dominant estate, (2) are necessary for the preservation of the servient estate, and (3) are necessary for the use of the servient estate. *See Watson v. Hoke*, 73 S. C. 361, 53 S. E. 537 (1906); *Jennings v. Jennings*, 104 S. C. 242, 88 S. E. 527 (1916); 28 C. J. S. *Easements* Section 98 (1941). He contends, however, the evidence adduced by Brown falls short of establishing that these factors are present in this case.

With respect to the first factor, unreasonable interference with the right of passage, Gaskins contends first that the owner of a servient estate as a matter of law may not erect a gate as a mere obstruction to the travel of people, as opposed to farm animals, and second, that Brown's gate as a matter of fact unreasonably interferes with the right of passage of Gaskins, his relatives and friends.

Gaskins relies on *Owens v. Cantrell*, 219 S. C. 433, 65 S. E. (2d) 773 (1951) as support for the principle that the servient estate may not erect gates which merely

obstruct human travel. A careful reading of *Owens* reveals the Court held only that two statutes relied upon by the servient owner to justify erection of a gate had application to the construction of gates to prevent the passage of animals, not people. The Court cited both *Watson v. Hoke, supra,* and *Jennings v. Jennings, supra,* which provide that the servient estate owner may erect gates provided they are necessary for the enjoyment of his property. *A priori,* the erection of a gate across a way *merely* to obstruct human traffic is not *necessary* to the owner's use of his property.

In this case, Brown erected the gate to prevent trespassing accompanied by theft, vandalism and littering. We hold that he had the right to erect the gate for these purposes although an indirect consequence of its erection was the obstruction of the travel of people on the road.

Gaskins also argues that the evidence shows the locked gate unreasonably interfered with his right to the use of his easement of ingress and egress over the road. The question of whether the locked gate constitutes an unreasonable interference with Gaskins's easement was expressly reserved by the master in equity and may not be made a part of this appeal since there has been no final adjudication of the issue. *See Trustees of Columbia Academy v. Board of Trustees of Richland School District No. 1,* 262 S. C. 117, 202 S. E. (2d) 860 (1974).

The second and third criteria for the erection of a gate by the owner of a servient estate require that the gate be necessary for both the preservation and the use of the servient estate. Gaskins argues that the evidence does not support the master's finding that the Browns needed the gate to use or preserve their property. He points out that although the gate had been left wide open for nearly a year prior to trial, the only difficulty the Browns had experienced was sporadic littering.

This is an equitable action to enjoin a continuing trespass which was referred with finality to a master in equity. The master's findings are equivalent to the findings of a circuit judge in an equity action without a reference. *See Strickland v. Prudential Insurance Company of America,* 278 S. C. 82, 292 S. E. (2d) 301 (1982). Therefore, this Court may make its own findings of fact according to its

view of the preponderance of the evidence. *Gilstrap v. Culpepper*, S.C., 320 S. E. (2d) 445 (1984).

The evidence reveals that the gate was erected when the Browns' property was being looted, littered and vandalized. Even Gaskins felt the gate was necessary to preserve the property from further destruction. Littering and trespassing resumed after Gaskins began to leave the gate open. We find that the preponderance of the evidence supports the master's finding that the installation of the gate was necessary for the preservation and continued use of the Browns' property.

We have reviewed the errors alleged by appellant Gaskins and find the allegations to be without merit. Consequently, the judgment of the master in equity is

Affirmed.

SHAW and GOOLSBY, JJ., concur.