488 S.E.2d 882

Marguerite P. BALLINGTON, Isadora Lena Hare, Bennie C. Paxton, S., Richard M. Kyzer, and B.F. Paxton, Jr., Personal Representative of the Estate of Mary Paxton, Plaintiffs,

Of Whom Marguerite P. Ballington, Isadora Lena Hare, Bennie C. Paxton, Sr., and Richard M. Kyzer are Appellants,

v.

David Wayne PAXTON, Respondent.

No. 2674.

Court of Appeals of South Carolina.

Submitted May 6, 1997

Decided June 9, 1997.

374

James C. Harrison, Jr., of Harrison & Quinn; Mary Connell Elam, Kenneth E. Ormand, Jr. and Carl A. Brumme, III, Columbia, for appellants.

James E. Barfield, Lexington, for respondent.

HOWELL, Chief Judge:

The Appellants appeal from the master-in-equity's refusal to require David Wayne Paxton to remove a gate and fence constructed on an easement over Paxton's property. We affirm.

## I.

This case involves a family dispute over access to Paxton Pond, an approximately 40–acre man-made pond in Lexington County. The pond and adjacent property are located on Highway 34, commonly referred to as Pond Branch Road. A dirt road, Paxton's Pond Road, goes from Highway 34 and follows along a portion of the pond's perimeter.

The Appellants, Paxton, and other family members derived title to the pond from J.E. Paxton. In the early 1960's, title to the land under the pond as well as rights to use the pond was divided into twelve shares and distributed to the children of J.E. Paxton, including J.E. Paxton, Jr. (J.E. Paxton), David Paxton's father. J.E. Paxton owned property adjacent to the pond, and family members traditionally gained access to the pond by crossing over his land. J.E. Paxton's property provided convenient access to one of the pond's two improved swimming areas and the area traditionally used as a boat launch.[1] In 1972, J.E. Paxton executed an instrument specifi-

---

[1] There are two improved swimming areas in the pond. The other parts of the pond are not usable for swimming because the pond is largely "marshy" and "boggy," with access to the bank difficult in many areas.

cally giving his siblings permission to cross his property to gain access to the pond. The document provided:

> I, John E. Paxton, Jr., . . . do hereby grant to all my brothers and sisters Louise Warner, Marguerite Ballington, Dora Hare, Patricia Kyzer and James and Bennie Charles Paxton and their heirs, the right to cross my property to get to the pond.
>
> If any of their pond rights are sold outside the family, this privilege is revoked to the buyer.

Beginning in the early 1970's, J.E. Paxton and his family experienced problems with trespassers and vandalism in connection with the pond and the access across their property. However, the Paxtons were generally able to control the problems because J.E. Paxton who was largely confined to his home after suffering a stroke, vigilantly patrolled the area. After J.E. Paxton died in 1985, his widow, Iris, who was alone on the property, became increasingly concerned about the trespassers and vandalism. In 1988, Iris built a fence parallel to Highway 34, with the fence beginning at the side of a small "pond house" and apparently extending down into the pond itself.[2] The fence blocked the family's traditional access route to the pond. In order to keep an eye on the traffic to the pond, Iris rerouted the existing road so that all cars had to drive by her house to get to the pond. She also installed a locked pedestrian gate in the fence and gave keys to various family members. This arrangement was apparently satisfactory to the family pond owners.

The fence, however, did not solve the trespassing and vandalism problems. Windows on Paxton's pond house were broken and the area was frequently littered with beer bottles and other trash. Trees and Paxton's picnic tables were used as firewood. Paxton also experienced problems with people raising or lowering the level of the pond by tampering with the boards on the spillway, and cars driving on the dam. According to Paxton and his brother, many of the problems

---

2. It is difficult to discern from the copies of pictures included in the record the precise location of the fence, and the testimony is not particularly helpful. Robert Hare, the husband of one of the Appellants, testified that the fence extended "right down to the swampy area," while Daniel Paxton, Paxton's brother, testified that the fence extended to the dam.

were caused by Paxton's cousins—that is, children of the Plaintiffs and the other sibling pond owners. They testified that their cousins and others would often appear at the pond intoxicated, use abusive language, or even discharge firearms. In addition, carloads of strangers would frequently appear at the pond, generally claiming to have been given permission to use the pond by one of the cousins.

As a result of the continuing problems, Paxton extended the fence in 1994, after he inherited the property burdened with the easement. The extended fence now completely surrounds the swimming area, extending approximately 100 feet into the water on each side of the swimming area. Thus, the only access to the swimming area is either through the fence or through one of the swampy or marshy areas of the pond. The extended fence includes a gate wide enough to accommodate a car.

Paxton left a key to the gate outside, hanging in a tree. After the key or the lock and chain began disappearing and the pond area continued to be littered, Paxton created a sign-in sheet and asked the pond owners to sign in when using the pond. The purpose of the sign-in procedures was to allow Paxton to know who was using the pond and when they used it, so he would know who to approach in the event there were problems.

Not surprisingly, the Plaintiffs were not pleased with the more restricted access to the pond, and they filed this action seeking an order enjoining Paxton from obstructing their easement rights across his property and seeking daily damages for the obstruction of the easement. Paxton answered, contending that his fence was necessary for the protection of his property and that it did not completely obstruct the Plaintiffs' access to the pond. Paxton also asked that the court "[d]etermine the allegations of abuse and misconduct by Plaintiffs' invitees claiming under them and enjoin and restrain them from entering [Paxton's] property and otherwise interfering with the property rights of [Paxton]."

The master concluded that the 1972 document executed by J.E. Paxton created a private easement or right-of-way across his property in favor of the Plaintiffs and their heirs. The master further concluded that Paxton's obstruction of the

easement through the locked fence was reasonable under the circumstances. Nonetheless, the master imposed certain restrictions on the operation of the fence and the conduct of the parties.

The order requires that Paxton maintain a locked receptacle in which the gate key and sign-in log will be located and that each of the Plaintiffs be given a key to the receptacle. The order provides that giving the key to a person who was not a party to this action or failing to use the sign-in log "shall be cause to restrain use of the easement." The order further provides that, "so long as a named Plaintiff is present, any of his or her family members, or non-family members, shall be permitted to use the easement, i.e. crossing [Paxton's] land to the pond. Any other use of [Paxton's] land shall only be with [Paxton's] express permission." Finally, as to three of Paxton's cousins, the order provides that they are

> restricted to being accompanied by a named Plaintiff and each is specifically enjoined and restrained from discharging firearms, use of non-prescription drugs, excessive consumption of alcohol, trashing or otherwise damaging [Paxton's] property, or otherwise acting in any unreasonable manner. These individuals are authorized to petition the Court under this action for relief from this restraint under a proper reasonable showing.

While the master concluded that neither party had proven monetary damages, he did order that the costs of the action be assessed against the Plaintiffs. The Appellants, four of the five original Plaintiffs, then filed this appeal.

## II.

On appeal, the Appellants first challenge the master's conclusion that the fence and gate across Paxton's property were not unreasonable obstructions of their easement rights. We find no error.

As a general rule, an owner of a servient estate may erect gates across an easement if the gates: "(1) are so located, constructed and maintained as not to unreasonably interfere with the right of passage of the dominant estate, (2) are necessary for the preservation of the servient estate, and (3) are necessary for the use of the servient estate." *Brown v.*

*Gaskins,* 284 S.C. 30, 33, 324 S.E.2d 639, 640 (Ct.App.1984); *accord Watson v. Hoke,* 73 S.C. 361, 53 S.E. 537 (1906); *Davis v. Epting,* 317 S.C. 315, 454 S.E.2d 325 (Ct.App.1994), *cert. denied* (August 28, 1995). Whether any such gates may also be locked depends upon the circumstances of the case. *Thomas v. Mitchell,* 287 S.C. 35, 336 S.E.2d 154 (Ct.App.1985).

 In this case, based upon our own view of the preponderance of the evidence, we conclude that Paxton's fence is necessary to protect his property and does not unreasonably interfere with the Appellants' right of access over the easement.[3] The record establishes that Paxton frequently had trespassers crossing his property to gain access to the pond and that the trespassers caused damage to his property. Given the attractive nature of the pond, a locked fence is the only reasonable means of controlling the problems. Thus, we conclude that the fence is necessary for the use and preservation of Paxton's property.

 The Appellants presented no evidence at trial demonstrating that obstacles created by the locked gate were unreasonable. Instead, the Appellants simply argued at trial and continue to argue on appeal that, by virtue of the easement granted by J.E. Paxton, they are entitled to free and unfettered access across Paxton's property. We disagree.

> A "right of way" means what those words imply; it does not mean a way always open; it does not mean a way without any obstruction.... The right reserved, is to pass and repass; and in the absence of express language, that means to pass and repass in a reasonable manner.

*Watson v. Hoke,* 73 S.C. 361, 362, 53 S.E. 537, 537 (1906) (Order of circuit court, affirmed by Supreme Court). Because

---

**3.** Because this action is equitable in nature, *see Thomas v. Mitchell,* 287 S.C. 35, 336 S.E.2d 154 (Ct.App.1985); *Brown v. Gaskins,* 284 S.C. 30, 324 S.E.2d 639 (Ct.App.1984), this Court has jurisdiction to review the entire record and make its our findings of fact according to our view of the preponderance of the evidence. *See, e.g., Townes Assocs. Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *Thomas,* 287 S.C. at 37–38, 336 S.E.2d at 155. However, this broad scope of review does not require us to disregard the factual findings of the master, who saw and heard the witnesses, and was in a better position to judge their credibility and demeanor. *Godfrey v. Heller,* 311 S.C. 516, 429 S.E.2d 859 (Ct.App.1993).

there is no language in J.E. Paxton's easement limiting his right to build a fence or granting rights of free and absolute access to the pond owners, the fact that the Appellants' access to the easement is somewhat obstructed by the fence is not dispositive. Based on our review of the record, we conclude that the locked fence and procedures established by the master amount to no more than a minimal impediment to the use of the easement. Accordingly, we find no error in the master's refusal to enjoin Paxton's obstruction of the easement.

## III.

The Appellants also challenge the master's restrictions on the access and behavior of three of Paxton's cousins. The Appellants argue that the master lacked jurisdiction over the cousins because they are not parties to the action. The appealed order provides that the cousins shall have access to the pond over Paxton's property only when accompanied by one of the Plaintiffs. The order also enjoins the cousins from engaging in certain behavior while at the pond.

As to the cousins' right of access independent of the Plaintiffs, we understand the order as simply stating the rights granted by the easement rather than imposing restrictions on the cousins. "An easement is either 'appurtenant' or 'in gross.' An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof." *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 420, 143 S.E.2d 803, 806 (1965). In this case, the evidence at trial established that, while perhaps not as convenient as the route across Paxton's property, there are other means of access to the pond.[4] Therefore, because the easement is not necessary for the use of the dominant estate, the easement must be characterized as an easement in gross rather than an appurtenant easement. *Id.; see also Steele v. Williams,* 204 S.C. 124, 131, 28 S.E.2d 644, 647 (1944) (In a case where the dominant estate had seventy feet of frontage on a paved street and the easement touched the dominant

---

4. For example, the record indicates that access to the pond could be gained over Paxton Pond Road.

estate only as a boundary, the court concluded that an easement for use of an alley was an easement in gross rather than appurtenant because "none of [the] elements of an 'appurtenant easement' appear.").

 "An easement, or right-of-way, in gross is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable." *Sandy Island,* 246 S.C. at 420, 143 S.E.2d at 806. Thus, the right to cross Paxton's property extends only to the owners of the dominant estate—the siblings of J.E. Paxton—but not their heirs. The fact that the instrument executed by J.E. Paxton stated that the right to cross his property extended to his siblings and their heirs does not change this conclusion.

> The fact that the words "heirs and assigns forever" were used [in the instrument creating the easement] does not and cannot change an easement in gross to an easement appurtenant to land. Even if it were admitted that the use of the words "heirs and assigns forever" connoted an intention of the parties to create an easement appurtenant to land, it would bring no advantage to the appellant. For to so do would contravene an established rule of law, and whatever may have been the intentions of the parties, it must yield to this rule of law so well established in this State.

*Steele,* 204 S.C. at 132, 28 S.E.2d at 647.[5] Because Paxton's cousins have no independent right to access under the easement, the portion of the order restricting their access to the property to occasions when they are accompanied by one of the pond owners does not amount to a restriction on their rights under the easement. Thus, the fact that the cousins were not parties to the action has no bearing on this portion of the order.

 However, as noted above, the order also enjoins the cousins from engaging in certain behavior at the pond. Because the cousins were not parties to the action, the master lacked jurisdiction over them. Thus, the order cannot be

---

**5.** Moreover, the fact that the instrument provided that the privilege of crossing J.E. Paxton's property "is revoked to the buyer" if any pond interest were sold outside the family indicates that J.E. Paxton intended to create an easement in gross rather than an appurtenant easement.

viewed as binding upon the cousins. *See Whaley v. Houser*, 18 S.C. 602 (1882) (A person who is not a party to a cause is not bound by the judgment); *accord Anderson County v. Indiana Lumbermens Mutual Ins. Co.*, 304 S.C. 363, 404 S.E.2d 718 (Ct.App.1991), *cert. denied* (September 5, 1991). Nonetheless, because the injunctive portion of the order in no way affects the Appellants, the Appellants lack standing to raise this issue on appeal, and we cannot consider it. *See Mann v. Walker*, 285 S.C. 194, 328 S.E.2d 659 (Ct.App.1985) (A party cannot raise on appeal a ruling or issue that does not pertain to the appealing party.); *cf. Duke Power Co. v. South Carolina Public Serv. Comm'n*, 284 S.C. 81, 326 S.E.2d 395 (1985) (to have standing to present a case, party must have a personal stake in the subject matter of the lawsuit); *Bivens v. Knight*, 254 S.C. 10, 13, 173 S.E.2d 150, 152 (1970) (A party "cannot appeal from a decision which does not affect his interest, however erroneous and prejudicial it may be to the rights and interests of some other person.").

## IV.

Finally, the Appellants contend the master improperly awarded attorney's fees and costs to Paxton. We disagree. First, as noted by Paxton, the master did not award attorney's fees to either party. Instead, the master ordered only that "the costs of this action should be taxed to the Plaintiffs." Accordingly, we need not consider the Appellants' arguments relating to the propriety of an award of attorney's fees. Moreover, we find no error in the award of costs to Paxton.

Clearly, Paxton was the prevailing party in this action. *See* S.C.Code Ann. § 15–37–20 (1976) ("No costs shall be allowed to any party unless he succeed, in whole or in part, in his claim or defense, unless otherwise directed by the judge hearing the cause."); *Jasper County Bd. of Educ. v. Jasper Co. Grand Jury*, 303 S.C. 49, 52, 398 S.E.2d 498, 499–500 (1990) (defining "prevailing party" under S.C.Code Ann. § 15–77–300 (1976) as "the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention, and in whose favor the decision or verdict is rendered and judgment entered."). Thus, the award of costs

was proper under S.C.Code Ann. § 15–37–10 (1976) (a plaintiff or defendant "shall be entitled to recover costs and disbursements ... against the losing party.") and Rule 54(d), SCRCP ("Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.").

 The Appellants also argue that the award of costs was improper because Paxton did not specifically request an award of costs in his pleadings. *See, e.g., Abbott v. Gore,* 304 S.C. 116, 403 S.E.2d 154 (1991) (Due process prohibits trial court from awarding relief not contemplated by the pleadings.). We disagree. Parties are put on notice through section 15–37–10 and Rule 54(d). SCRCP that costs will be assessed against them if they do not prevail. Thus, the assessment of costs against a party does not violate due process even in the absence of a specific request for costs in the opposing party's pleadings. We therefore conclude that the master properly awarded costs to Paxton in this case.

Accordingly, for the foregoing reasons, the decision of the master-in-equity is hereby

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.